UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Case No. 19 — 055 WES |
| | Violation: |
| | 18 U.S.C. § 371 – |
| v. | (Conspiracy to Commit Wire Fraud) |
| | 18 U.S.C. § 2320(a)(1) – |
| RAMIN KOHANBASH | (Trafficking in Counterfeit Goods) |

**INFORMATION**

The United States Attorney charges that:

**COUNT 1**
(Conspiracy to Commit Wire Fraud)

**Introduction**

At all times relevant to this Information, unless herein stated:

1.    Defendant RAMIN KOHANBASH ("KOHANBASH") was a wholesaler of military uniform items and gear.

2.    KOHANBASH operated and controlled California Surplus, Inc., Gan Eden, LLC, and FR-HQ, LLC.   Gan Eden, LLC owned the warehouse location in Elizabeth, NJ at which KOHANBASH stored military uniforms and gear wholesaled by him through California Surplus, Inc. and FR-HQ, LLC.

3.      D.O. was a company that sold uniform items and gear to the United States military and its Base Supply Centers, the National Guard, police and other governmental agencies.

4.      T.R. was an employee of D.O. who served as the Assistant Manager.

5.      D.R. was the manager of D.O.

6.      R.L. was an employee of D.O. who served as the Assistant Operations Manager.

7.      B.K., KOHANBASH'S supplier, caused military uniform items and gear to be manufactured in China.

8.      Title 10, United States Code, Section 2533a, "The Berry Amendment," provides that uniforms, fabrics, gear and other specifically designated items sold to the United States Department of Defense ("DOD") must be produced in the United States.

9.      Title 19, United States Code, Sections 2501, *et al.*, "The Trade Agreements Act," provides that products sold to the United States government must be made in the United States or in a Trade Agreements Act ("TAA") designated country.

10.     Government Suppliers & Associates ("Government Suppliers") was a vendor of uniforms and gear to the United States Department of Defense ("DOD") and other government agencies, to include law enforcement.   Government Suppliers held contracts with the Defense Logistics Agency and General Services Administration, which allowed it to sell products to the government for use in DOD's Foreign Military Sales program.

2

11.     United Associates Limited ("United") was a company located in North Kingstown, RI, which manufactured and sold protective clothing for the United States military and other government agencies.   United sold protective clothing, including cold weather and flame resistant apparel, for the military and government agencies. United sold to wholesalers, including D.O. and Base Supply Centers.

12.     United owned the trademark United Join Forces®, a name and associated design for use in clothing registered with the U.S. Patent and Trademark Office ("USPTO").

13.     MultiCam® as a word was a registered trademark with the USPTO for use in conjunction with a variety of goods to include clothing and garments.

14.     United manufactured a Multicam® APEC parka that was used by the United States Air Force, including personnel deployed to Afghanistan.   Among other specifications, the parka was made with fabric having Near-Infrared (NIR) signature management technology.   The NIR technology allowed the service member to appear at the same radiation level as the surrounding terrain, thus making the wearer more difficult to detect by NIR Image Converters, such as certain night vision goggles.   The parka was also water-resistant.

15.     FREE®, as a name and associated design, was registered with the USPTO. FREE® was trademarked for use in clothing for protection against fire and was intended for military and law enforcement personnel.

3

16.     Polartec®, as a name and design, was a registered trademark with the USPTO for use in clothing.

17.     Primaloft®, as a name and design, was a registered trademark with the USPTO for use in clothing.

## The Conspiracy

18.     From in or about January 2013, and continuing until in or about October 10, 2018, in the District of Rhode Island and elsewhere, defendant RAMIN KOHANBASH, T.R., D.R., R.L., and B.K. knowingly, willfully and unlawfully combined, conspired and agreed together and with each other, and with others known and unknown to the United States Attorney, to commit wire fraud, by knowingly devising a scheme and artifice to defraud, and for obtaining money and property from the United States government and from wholesalers who supply the United States government, by means of false and fraudulent pretenses, representations and promises, through the transmission in interstate commerce of wire communications, contrary to 18 U.S.C. § 1343.

## Object of the Conspiracy

19.     The object of the conspiracy was for defendant RAMIN KOHANBASH, T.R., D.R., R.L., and B.K. to defraud and unlawfully obtain over $20,000,000 in funds from the United States government and from wholesalers who supply the United States government, by trafficking in counterfeit military uniforms and gear, and military

4

uniforms and gear that were falsely represented to be Berry Amendment or TAA compliant, that is, manufactured in the United States or a designated country.

## Manner and Means of the Conspiracy

The manner and means by which the co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included, among others, the following:

20.     It was part of the conspiracy that defendant KOHANBASH sent sample military uniform items and gear to B.K., who caused counterfeit reproductions of those items to be manufactured in China (hereinafter "the counterfeit goods").

21.     It was further part of the conspiracy that B.K. sent samples of the counterfeit goods to defendant KOHANBASH for approval prior to mass production of the counterfeit goods.

22.     It was further part of the conspiracy that B.K. emailed photographs of the counterfeit goods, as well as their hangtags and labels, to defendant KOHANBASH for approval prior to mass production of the counterfeit goods.

23.     It was further part of the conspiracy that defendant KOHANBASH instructed B.K. via email on what, if any, changes to make to the counterfeit goods or their hangtags and labels.

24.     It was further part of the conspiracy that upon receiving defendant KOHANBASH's approval, B.K. caused counterfeit goods to be manufactured in China for defendant KOHANBASH.

25.     It was further part of the conspiracy that B.K caused the counterfeit goods to be delivered to defendant KOHANBASH at his warehouse in New Jersey.

26.     It was further part of the conspiracy that defendant KOHANBASH sold the counterfeit goods to D.O., Government Suppliers, United, and other wholesalers of military uniform items and gear.

27.     It was further part of the conspiracy that defendant KOHANBASH provided wholesalers with false Berry Amendment certification letters, and falsely represented that the counterfeit goods were TAA compliant.

## Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to accomplish its objectives and purposes, at least one of the following overt acts, among others, was committed by one or more of the co-conspirators in the District of Rhode Island and elsewhere:

28.     In or about March 2016, defendant KOHANBASH emailed D.O. with a link to United's online catalogue description of the Multicam® APEC parka.

29.     In or about March 2016, defendant KOHANBASH emailed B.K. regarding hangtags needed for a hood manufactured by B.K.

30.     In or about March 2016, B.K. responded with a photograph of the FREE® hangtag and asked defendant KOHANBASH to confirm whether they will keep the FREE® hangtag or remove it from the hood.

31.     In or about April 2016, defendant KOHANBASH drop shipped an order of counterfeit Primaloft® parkas to the Defense Logistics Agency in fulfillment of an order placed with defendant KOHANBASH by R.L., an employee of D.O.

32.     In or about May 2016, B.K. emailed photographs of a United Join Forces® label for the Multicam® APEC parka to defendant KOHANBASH for approval.

33.     In or about July 2016, defendant KOHANBASH emailed T.R., an employee of D.O., photographs of a counterfeit Multicam® APEC parka.

34.     In or about January 2017, defendant KOHANBASH drop shipped counterfeit Polartec® fleece jackets to Barksdale Air Force Base, in fulfillment of an order placed with defendant KOHANBASH by R.L., an employee of D.O.

35.     In or about March 2017, an employee of D.O. emailed defendant KOHANBASH Universal Purchase Code labels for the Multicam® APEC parka.

36.     In or about May 2017, B.K. caused a 40-foot container to be shipped from China to the United States for delivery to defendant KOHANBASH.   The container contained approximately 1,100 counterfeit Multicam® APEC parkas identified to U.S. Customs and Border Protection as, "outerwear, anorak, water resistant garm, of man made fib."   The container arrived to the United States in June 2017.

37.     In or about August 2017 and September 2017, an employee of D.O. emailed defendant KOHANBASH numerous purchase orders for Multicam® APEC parkas.

38.    In or about October 2017, D.O. shipped 200 counterfeit Multicam® APEC parkas, purchased from defendant KOHANBASH, to a Base Supply Center located on an Air Force Base.    The counterfeit parkas lacked the NIR-technology that made the wearer difficult to detect by night vision goggles.

39.    In or about June 2018, B.K. sent an invoice to defendant KOHANBASH for a shipment from China of 2,400 counterfeit FREE® hoods, among other items.

40.    In or about June 2018, R.L. sent a false Country of Origin certificate to a Base Supply Center.    The certificate was signed by "RAYMOND CHOEN" of FR-HQ LLC, in Elizabeth, NJ, and dated June 26, 2018.    The certificate falsely represented that the fleece jackets purchased by the Base Supply Center were "fully in compliance with the Berry Amendment (10 U.S.C. 2533a)…meaning that the textile end products including all of the components thereof have been grown, reprocessed, reused, or produced in the United States or one of its territories."

41.    In or about June 27, 2018, R.L. emailed the above-referenced Base Supply Center in reference to defendant KOHANBASH's company, FR-HQ, and the Country of Origin certificate.    In the email, R.L. falsely represented, "I have been to his office and I have been in the factory he uses to make products for us.    It is a fairly large operation. We have been using his products for a long time and he has produced quality products for us at competitive prices."

42.    In or about July 2018, B.K. forwarded an email to KOHANBASH from the factory in China.    The email contained the list of counterfeit items being shipped to the

8

U.S., along with photos of the items and hangtags and the location of the removable "Made in China" stickers for each item.

43.    In or about August 2018, B.K. caused a container containing counterfeit FREE® hoods to be delivered to defendant KOHANBASH.

44.    In or about August 2018, defendant KOHANBASH sold 150 counterfeit FREE® hoods to D.O.

45.    In or about August 2018, defendant KOHANBASH shipped 60 counterfeit Polartec® fleece pullovers to United in North Kingstown, RI.

46.    In or about September 13, 2018, D.O. offered counterfeit Primaloft® jackets and trousers for sale on GSA Advantage.   Goods offered for sale on GSA Advantage must be TAA compliant.

47.    In or about October 3, 2018, D.O. shipped counterfeit Primaloft® jackets and trousers to the Rhode Island National Guard located in East Greenwich, RI.   The jackets contained counterfeit Primaloft® hangtags and labels and ten of the items purported to be manufactured by defendant KOHANBASH's company, FR-HQ.

48.    In or about October 10, 2018, defendant KOHANBASH possessed for distribution thousands of counterfeit FREE® hoods in his warehouse.   The sewn-in care tags falsely represented:   "Highly breathable. Loffed [sic]   fibers trap air, retaining body heat. Permanently flame resistant."   A second sewn-in tag falsely asserted, "NFPA 2112 COMPLIANT," which is an industry standard for flame resistant attire. The counterfeit FREE® hoods were not flame resistant.

All in violation of 18 U.S.C. § 371.

## COUNT 2

### (Trafficking in Counterfeit Goods)

49.     The allegations contained in paragraphs 1 through 17 of this Information are re-alleged in this Count and are incorporated by reference as if fully set forth herein.

50.     On or about February 25, 2019, in the Eastern District of New York and elsewhere, defendant RAMIN KOHANBASH, did intentionally traffic and attempt to traffic in counterfeit goods, specifically counterfeit Polartec® fleece jackets, knowingly using a counterfeit mark, namely Polartec®, on and in connection with such goods.

In violation of 18 U.S.C. § 2320(a)(1).

## FOREITURE ALLEGATION

Upon conviction of Counts 1 and 2 of this Information, defendant RAMIN KOHANBASH shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and (D) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.   The property to be forfeited includes, but is not limited to, a sum of money equal to $20,000,000, including $24,105 in U.S. Currency seized on October 10-11, 2018, proceeds obtained as a result of the offense, and the following specific property:

a.  Counterfeit items seized in the federal search warrant executed at defendant KOHANBASH's warehouse on October 10-11, 2018.

Namely, over 1,700 boxes of counterfeit military uniform items and gear.

b. Contents of Container # CMAU4579981, including 792 Multi-Color Ponchos with Zipper L306Z; 2,736 Multi-Color Poncho No Zipper 307; 1,200 Cameo Poncho No Zipper 301; 660 Army Gloves; and,1,200 Military Style Fleece Jackets.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

11

All in accordance with 18 U.S.C. §  981(a)(8), as incorporated by 28 U.S.C.

§ 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

AARON WEISMAN
UNITED STATES ATTORNEY


SANDRA R. HEBERT
Assistant United States Attorney

ZACHARY A. CUNHA
Assistant United States Attorney


WILLIAM J. FERLAND
Criminal Division Chief

Date: ___5/20/19___

12